IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ANDREW STROTHER, on behalf of himself and all others similarly situated,<br><br>           Plaintiff,<br><br>v.<br><br>(1) MIDFIRST BANK,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.: CIV-23-995-F<br>) Class Action<br>)<br>)<br>)<br>) |

**DEFENDANT MIDFIRST BANK'S
NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant MidFirst Bank ("MidFirst"), by and through its undersigned counsel of record, hereby removes this action from the District Court of Oklahoma County, State of Oklahoma.[1]  In support thereof, MidFirst respectfully states as follows:

**PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS**

1.    <u>Petition (Class Action Complaint)</u>:  On October 5, 2023, Plaintiff Andrew Strother ("Plaintiff") initiated this case against MidFirst by filing a class-action petition ("Petition" or "Pet.") in the District Court of Oklahoma County, State of Oklahoma

---

[1] MidFirst disputes Plaintiff's allegations, including, but not limited to, regarding the amount or recoverability of any alleged damages being sought, and believes the allegations and claims contained in the Petition lack merit and denies certification would be proper here. By seeking removal, MidFirst does not waive and expressly reserves all rights, arguments and defenses under applicable law.

captioned *Andrew Strother v. MidFirst Bank*, CJ-2023-5736 ("State Court Action"). A copy of the Petition is attached hereto as **Exhibit 1**.

2. Pursuant to 28 U.S.C. § 1446(a), a copy of the docket sheet and all process, pleadings, and orders that have been filed and served in the State Court Action is attached hereto as **Exhibit 2-Docket Sheet; Exhibit 3-Summons; Exhibit 4-Affidavit of Service; Exhibit 5-Entry of Appearance of Plaintiff's Counsel; Exhibit 6-Entry of Appearance of Defendant's Counsel; Exhibit 7-Unopposed Motion for Extension of Time; Exhibit 8 -Order.**

3. MidFirst was served in person on October 6, 2023. A copy of the proof of service is attached hereto as **Exhibit 4**. This Notice of Removal is therefore timely filed under 28 U.S.C. § 1446(b)(1).

4. In his Petition, Plaintiff alleges that on or about August 18, 2023, Defendant "began sending Plaintiff" and other putative class members "an untitled letter (the 'Notice Letter')" informing them of a "data security incident." (Pet. ¶ 27 (citing notice letter).) Plaintiff alleges he was informed that between May 27-31, 2023, "an unauthorized party was able to download files" from the MOVEit platform, which was operated by a MidFirst IT vendor. (Pet. ¶¶ 5, 27.) Plaintiff alleges that the incident "compromised" personally identifiable information ("PII") that included names, Social Security numbers, account numbers, and "other sensitive information." (Pet. ¶ 6.)

5. Plaintiff asserts five causes of action in the Petition: Negligence, Negligence *per se*, Breach of Implied Contract, Violation of Oklahoma Consumer Protection Act, and Unjust Enrichment. (Pet.¶¶ 153-246.) Plaintiff seeks, *inter alia*, the following forms of

relief for himself and the putative class: (i) class certification and appointment of Plaintiff and his counsel to represent the putative class; (ii) equitable and injunctive relief; (iii) award of damages for actual, compensatory, statutory, and nominal damages; (iv) punitive damages, (v) attorney's fees and costs; (vi) pre- and post-judgment interest; and (vii) any "further relief as this Court may deem just and proper." (Pet. p. 69-70.)

6. Plaintiff seeks to certify a nationwide class under 12 O.S. § 2023(b)(2) and (b)(3) on behalf of: "All individuals in the United States whose PII was impacted as a result of the Data Breach (the 'Class')". (Pet. ¶¶ 141-42.) Plaintiff alleges that the putative class is "so numerous" that joinder would be impracticable and states that, upon information and belief, "thousands of persons were impacted in the Data Breach." (Pet. ¶ 145.)

**THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

7. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), as codified in 28 U.S.C. § 1332 *et. seq.* There is no presumption against removal in CAFA cases and "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (internal citations omitted). CAFA gives federal district courts original jurisdiction over class actions where: (i) there are at least 100 members in the putative class, (ii) any member of a class of plaintiffs is a citizen of a state different from any defendant (*i.e.,* minimal diversity of citizenship), and (iii) the aggregate amount in controversy exceeds $5 million.

*See* 28 U.S.C. § 1332(d); *see also Reece v. AES Corp.*, 638 F. App'x 755, 767 (10th Cir. 2016) (reciting the three CAFA elements).

8. This action clearly satisfies all three elements necessary under CAFA for this Court to retain jurisdiction.

9. <u>This is a Putative Class Action:</u>  This case presents a putative class action within the definition of CAFA because Plaintiff seeks class action certification under 12 O.S. § 2023.  Pet. ¶ 141; *see also* § 1332(d)(1)(B) ("'[C]lass action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure . . .").

10. <u>There are at least 100 Class Members:</u>  For CAFA to apply, "all proposed plaintiff classes in the aggregate" must be 100 or more.  28 U.S.C. § 1332(d)(5)(B).  Plaintiff proposes to represent a nationwide class of "[a]ll individuals in the United States whose PII was impacted as a result of the Data Breach[.]"  (Pet. ¶ 142.)  While Plaintiff does not quantify the Class, he states that, upon information and belief, "thousands of persons were impacted in the Data Breach."  (Pet. ¶ 145.)

11. <u>There is minimal diversity of citizenship:</u>  Under CAFA, minimal diversity is met if "any member of a class of plaintiffs is a citizen of a state different from any defendant."  28 U.S.C. 1332(d)(2).  Furthermore, a class action "may be removed to a district court of the United States in accordance with section 1446 . . . without regard to whether any defendant is a citizen of the State in which the action is brought."  *See also* 28 U.S.C. § 1453(b).

-4-

12. Plaintiff alleges that "MidFirst Bank is an Oklahoma corporation with its principal place of business located in Oklahoma City, Oklahoma." (Pet. ¶ 13.)

13. Plaintiff alleges that he "is, and at all times mentioned herein was, an individual and citizen of Houston, Texas." (Pet. ¶ 12.)

14. Because Plaintiff and Defendant are citizens of different states, the minimal diversity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2).

15. <u>The Amount in Controversy Requirement is Met</u>:  CAFA requires that the aggregated claims of individual class members "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2), (d)(6); *see also Dart,* 574 U.S. at 89 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"). To assess the amount in controversy, the court can accept the allegations in the plaintiff's complaint as true. *See Sagacity, Inc. v. Magnum Hunter Prod., Inc.*, No. 17-cv-101, 2018 WL 10373674, at *1 (E.D. Okla. Aug. 9, 2018) ("If the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. … The complaint's allegations may still be used to estimate an amount in controversy."); *Heather v. Air Methods Corp.*, No. 16-cv-843, 2016 WL 7109675, at *1-2 (W.D. Okla. Dec. 6, 2016) ("Nor does it matter, whereas here, the plaintiffs have failed to specify the numerical value of the damage claim. … The complaint's allegations may still be used to estimate an amount in controversy … Finally, even if this was a close question, the presumption of CAFA jurisdiction weighs in Defendants favor.") (internal quotation marks omitted) (internal citations omitted).

16. Plaintiff states that the value of his personal information, such as that allegedly compromised here, can sell for up to $200. (Pet. ¶ 58.)

17. Plaintiff seeks an award of compensatory damages, statutory damages, and punitive damages. (Pet. 69-70.) Plaintiff also seeks an award of attorneys' fees, costs, and other expenses, and pre- and post-judgment interest on any amounts awarded. Pet. p. 70; *see also McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").

18. Plaintiff alleges that MidFirst's offer of twenty-four months of free credit monitoring and identity protection service is "wholly inadequate" as Plaintiff and the putative class will allegedly face "multiple years" of ongoing data threats and that "once this service expires, Plaintiff and Class Members will be forced to pay out of pocket for necessary identity monitoring services." (Pet. ¶ 51.) This allegation of credit monitoring costs allows reference to publicly available pricing data, and this issue has also been considered by other courts. *See Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *12 (E.D. Pa. Sept. 24, 2019) ("[I]dentity theft monitoring has a retail value of $9.99 or $19.99 per month"); *Rauhala v. Greater New York Mut. Ins., Inc.*, No. CV 22-1788, 2022 WL 16553382, at *2 n.17 (E.D. Pa. Oct. 31, 2022) ("[Plaintiff] alleges there are 34,000 putative class members. The aggregate amount in controversy exceeds $5 million because her request for at least five years of credit monitoring services for the class would cost more than $20 million"); *Morales v. Conifer Revenue Cycle Sols., LLC*, No. 23-cv-01987, 2023 WL 5236729, at *3 (C.D. Cal. Aug. 15, 2023) ("Court considers it to

be a bare minimum of two months. For the first two months of credit monitoring, TransUnion charges $59.90 and Equifax charges $24.90, for a total of $84.80. For 120,000 class members, this adds up to $10,176,000.00 for just the first two months of service."). Here, for "thousands" of alleged putative class members incurring monthly credit monitoring costs over multiple years plausibly suggests that credit-monitoring costs alone could exceed $5 million.

19. Furthermore, Plaintiff demands a broad range of injunctive relief including, *inter alia*, that MidFirst: "implement and maintain a comprehensive Information Security Program"; "engage independent third-party security auditors/penetration testers"; "engage independent third-party security auditors and internal personnel to run automated security monitoring"; "establish an information security training program"; "for a period of 10 years, appoint[] a qualified and independent third party assessor to conduct SOC 2 Type 2 attestation on an annual basis." (Pet. at 66-70.)  This requested relief contemplates significant spending on injunctive measures and further pushes the amount in controversy over the $5 million threshold.  *See Heather*, 2016 WL 7109675, at *2 n.1 (noting in CAFA case that "the value of [] injunctive relief is an appropriate standard by which to measure the amount in controversy").

20. As reflected above, Plaintiff's class action Petition contemplates an amount in controversy that could far exceed $5,000,000 for the putative class.

## OTHER PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

21. <u>Consent</u>:  MidFirst is the only defendant named in the Petition and consent of all defendants is not required under CAFA.  28 U.S.C. § 1453(b) (a class action "may be removed by any defendant without the consent of all defendants").

22. <u>Removal to the Proper Court</u>:  Removal to the United States Court for the Western District of Oklahoma is proper because this Court is part of the district and division "embracing the place"—Oklahoma District Court, Oklahoma County—where this action was initially filed.  28 U.S.C. §1441(a).

23. <u>Removal is Timely</u>:  MidFirst was served with the Summons and Petition on October 6, 2023.  Ex. 4.  This Notice of Removal is filed on November 3, 2023, within 30 days after service on MidFirst, in accordance with 28 U.S.C. § 1446(b).  This Notice of Removal is signed according to Rule 11 of the Federal Rules of Civil Procedure.  28 U.S.C. § 1446(a).

24. <u>Notice to Plaintiff and State Court</u>:  After filing this Notice of Removal, MidFirst will promptly serve written notice of this Notice of Removal on counsel for all adverse parties and file the same with the Oklahoma District Court, Oklahoma County in accordance with 28 U.S.C. § 1446(d).

25. <u>Pleadings, Process, and Orders</u>:  True and correct copies of all process, pleadings, and orders served on MidFirst in the State Court Action are attached hereto.

## NON-WAIVER OF RIGHTS, ARGUMENTS AND DEFENSES

26. By removing this action from Oklahoma District Court, Oklahoma County, MidFirst does not waive any rights, arguments and/or defenses available to it, and expressly reserves the same.

27. By removing this action from Oklahoma District Court, Oklahoma County, MidFirst does not admit any of the allegations in Plaintiff's Petition and indeed vigorously disputes the same.

**WHEREFORE**, MidFirst Bank removes the above-captioned action from the Oklahoma District Court, Oklahoma County to the United States District Court for the Western District of Oklahoma.

Dated:  November 3, 2023

Respectfully submitted,

/s/ *William H. Hoch*
TIMILA S. ROTHER, OBA # 14310
WILLIAM H. HOCH, OBA # 15788
ANTHONY HENDRICKS, OBA # 31083
**CROWE & DUNLEVY, PC**
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
timila.rother@crowedunlevy.com
will.hoch@crowedunlevy.com
anthony.hendricks@crowedunlevy.com

-And-

**NORTON ROSE FULBRIGHT US LLP**

STEVEN JANSMA, OBA # 30348
111 W. Houston Street, Suite 1800
San Antonio, TX 78205
Telephone: (210) 270-9366
steven.jansma@nortonrosefulbright.com

JASON FAGELMAN (*pro hac vice
application forthcoming)
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 855-8120
jason.fagelman@nortonrosefulbright.com

JOSEPH HUGHES (*pro hac vice
application forthcoming)
SEAN M. TOPPING (*pro hac vice
application forthcoming)
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 318-3363
joe.hughes@nortonrosefulbright.com
sean.topping@nortonrosefulbright.com

**ATTORNEYS FOR DEFENDANT MIDFIRST BANK**

**CERTIFICATE OF SERVICE**

I certify that on November 3, 2023, the same date this Notice of Removal was filed in the United States District Court for the Western District of Oklahoma, a true and correct copy of said Notice of Removal was served upon the above-named plaintiff by electronically transmitting the Notice of Removal to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

William B. Federman
Tanner R. Hilton
**FEDERMAN & SHERWOOD**

>10205 N. Pennsylvania Ave.
>Oklahoma City, Oklahoma  73120

And by U.S. Mail, postage pre-paid, on the following who is not a registered participant of the Electronic Case Filing System:

>David K. Lietz
>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
>5335 Wisconsin Ave. NW
>Washington, D.C. 20015-2052

and further that a copy of said Notice of Removal was delivered to the Oklahoma County Court Clerk for filing on the 3rd day of November 2023.

/s/ *William H. Hoch*